# Commonwealth ex rel. W. U. Hensel, Attorney General, *v.* The Young Men's Christian Association of Warren, Pa., Appellant.

*Deeds—Description—Boundaries.*

The representation of a tract of land in a plot as abutting upon another tract, or upon a stream or other natural object is the same as saying in words that it extends to the other tracts or stream as its boundary.

Under the act of April 18, 1795, the site of the present borough of Warren was surveyed into lots, streets and alleys by commissioners appointed by the commonwealth, and the lots were sold by number as laid down on the plot returned by the commissioners.    The names and widths of the streets were marked upon the draft; and the southern boundary of Water street was shown on it by the irregular margin of the river.    It was marked "Water Street, one hundred feet wide."    The plot showed the section of the street in dispute as bordering on the river on the south. Another section of the street was shown on the plot as not bordering on the river, and land between it and the river was plotted, and streets entering the street at this section were extended across to the river, while streets entering it on the section in dispute were not so extended.    *Held*, that the southern boundary was the river, and that the width of the street was not limited to one hundred feet.        •

*Borough of Warren—Act of March 6, 1845.*

The act of March 6, 1845, authorizing the burgess and town council of Warren borough to " lay out into lots any ground not belonging to individuals along the banks of the Allegheny river and Conewango creek in the bounds of said borough, and the same to sell and convey . . . . provided that nothing herein contained shall interfere with the use of said river and creek as public highways," did not authorize the borough authorities to sell any land along the margin of the river and creek within the limits of Water street as shown by the original plot of the commissioners.

*Rivers and streams—Waters—Riparian owners.*

While a riparian owner has the right to use the land between high and low watermark, he has no right to erect permanent structures on the land which will interfere with the right of the public to moor over any part of the land at high water; and an injunction will issue at the instance of the commonwealth to restrain such erection.

Argued May 10, 1895.  Appeal, No. 19, July T., 1895, by defendant, from decree of C. P. Warren Co., Dec. T., 1894, No. 62, awarding a permanent injunction.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Bill in equity to restrain the construction of a building upon land in borough of Warren.

The bill set forth (1) the town of Warren was created by act of assembly of April 18, 1795, authorizing the governor to appoint two commissioners to lay out and survey into town lots and out lots certain lands theretofore reserved for public use at the mouth of Conewango creek, and by said act it was further provided that all the streets, lanes and alleys thereof should be and remain common highways; and that said commissioners should make a draft and return thereof, and file the same in the office of the secretary of the commonwealth.  (2) That pursuant to said authority the governor appointed Andrew Ellicott and Gen. Wm. Irvine as such commissioners who forthwith proceeded to lay out and survey said town into lots, streets, alleys and public squares, and did thereafter make and file a due return and draft of such survey in said office.  (3) That thereafter and prior to the year 1845, the commonwealth proceeded to and did sell all, or nearly all, of said lots to purchasers in accordance with said survey and draft.  (7) That by the act of assembly of April 3, 1832, the said town of Warren was erected into a borough under the same name.  Its boundaries were fixed as originally laid out by the said commissioners.  Its southern boundary being particularly specified as a line running from the junction of Conewango creek with the Allegheny river, thence down and by said Allegheny river as far as the southwest corner of said town as laid out by the commissioners aforesaid.  (8) That by act of assembly of March 6, 1845, the burgess and town council of said borough were au-

thorized to "lay out into town lots any ground not belonging to individuals along the banks of the Allegheny river and Cone-wango creek, in the bounds of said borough, and the same to sell or convey in fee or otherwise to purchasers in such manner as they may deem advisable, and the proceeds of such sales to be paid into the treasury of said borough for the use of the same: provided that nothing herein contained shall interfere with the use of said river and creek as public highways." (9) That on or about the —— day of July, 1891, the said burgess and town council, claiming that the said act of assembly of March 6, 1845, vested in them the title to the land along the said river bank 100 feet from the north line of Water street to the Allegheny river lying west of the Pleasant bridge, resolved to lay out the same into such lot or lots as desirable, and sell the same at public auction. In pursuance of such resolution the burgess and town council did thereafter, on the 3d day of August, 1891, sell at public auction to the defendant and executed to him a deed for "land in said borough on the south side of Water street, bounded and described as follows: Commencing at a post on the south side of Water street, one hundred feet from the north side of said street, and on the west line of the right of way of the Pleasant Bridge Company, as conceded to it by said borough council; thence west along the line parallel to the north line of Water street, 78.8 feet to a point; it being to a point where a line protracted from the corner of Hickory street and Water streets to the north side of Water street and at right angles to the same, would intersect this line; thence by a line parallel with the right of way of the Pleasant Bridge Company to the Allegheny river; the land hereby intended to be sold being the land lying west of the Pleasant Bridge Company's right of way, and south of the 100 foot street as now established, to the Allegheny river for a distance of 78.8 feet." (10) The defendant is a corporation, incorporated under and by virtue of the laws of the commonwealth of Pennsylvania.

Plaintiff's requests for findings of fact were as follows:

"1. The defendant occupies a lot of land in Warren borough adjoining the right of way of the Pleasant bridge, the northern limit of which land is about 10 feet from the southerly verge of the traveled part of Water street, and 6 feet below the level of the same, which land descends at an angle of 35 degrees

from the horizontal until it reaches high watermark of the Allegheny river, and at a more gentle slope descends thence to low watermark. Of this land the defendant has actually occupied the rear or river portion, inclosing the same with a heavy stone foundation wall over 3 feet high and extending back about 34 feet on the sides to the steep grade above mentioned.

" 2. Of the land thus occupied by the defendant the rear portion is in ordinary high water covered by the Allegheny river to an extent ranging from 34 feet and upwards on the east side to 46.5 feet and upwards on the west side.

" 3. Ordinary high water in the Allegheny river at this point is at least 9 feet above low watermark.

" 4. Nearly one half the horizontal area of the land occupied by defendant is between the low and ordinary high watermarks of the Allegheny river and the remainder is a steep river bank.

" 5. The Allegheny river is a navigable stream and public highway, for the improvement of which money has been and is appropriated by the United States, and it is in public use for transporting timber, logs, etc., to market.

" 6. The building begun by defendant is an obstruction to the free use and navigation of the Allegheny river and the use of an ancient landing at the head of an eddy or safe harbor at the foot of Hickory street and at the foot of an old but used and passable road leading thereto from the highest plateau on which the borough of Warren is built.

" 7. No line was ever run marking the southerly side of Water street and none appears on the original survey of the town (now borough) of Warren between the northern boundary of said street and the river.

" 8. At the point occupied by defendant, and for many squares below that point, a line 100 feet from and parallel with Water street would be 10 feet and more over the verge of the steep and almost inaccessible bank of the Allegheny river.

" 9. Water street extends to the Allegheny river at the point claimed by defendant, and for many squares below or westwardly, as far at least as the P. & E. railroad bridge.

" 10. There is no vacant land between Water street and the Allegheny river, which the borough of Warren could or can sell, at least between Pleasant bridge and Laurel street.

" 11. The land claimed by defendant is situated in three pub-

lic highways, to wit, Water street, Hickory street and the Allegheny river, and there is no vacant land between them at that point.

"12. The defendant obtained no land or right to occupy any by virtue of its deed from Warren borough.

"13. The land claimed and occupied by defendant is located directly across the foot of Hickory street, in the prolongation of its present lines to the Allegheny river.

"14. At the west of the lot occupied by defendant the borough has erected a large and expensive stone building for a lockup, which building would be directly in the way of any attempt to change Hickory street to cross Water street at right angles to the latter.

"15. The original survey of the town of Warren shows that all cross streets run to the water courses or large streams bounding said town on the east and south.

"16. Although the borough has in past years laid off and sold some lots along the Conewango creek and tail race, yet there have never been any sales of such lots on the Allegheny river, or across or obstructing the foot of any street in the borough.

"17. The predecessors of the present owners of the lots on Hickory or Water streets purchased said lots from the commonwealth by the original draft or survey of the town (now borough) of Warren, which shows Water street bounded on the south by the Allegheny river, and Hickory street running to said river.

"18. The erection of the proposed building by defendant would cut off the view or outlook to and across the said river from the residents of or people on Hickory street.

"19. The said building would also greatly obstruct and hinder the outlook and view of the residents and occupants of the northerly side of Water street from Hickory street east, and of Second street.

"20. The defendant had notice, before paying any purchase money for the lot in question, that the title to the lot and the right of the borough to sell it was seriously questioned and doubtful.

"21. The defendant, before purchasing, also had full notice that the borough could not convey to it any right of occupancy below high watermark.

"22. The northern line of Water street is built up with permanent brick buildings and has been continuously occupied for business and residence purposes for the past 50 years and upwards, and said line of buildings is the northerly line of said street."

Plaintiff's points were as follows :

"1. The defendant has no right to erect its building on any part of the lot claimed to be purchased by it from Warren borough between the low and ordinary high watermarks of the Allegheny river at that point.

"2. The defendant has no right to erect a building on or to occupy in any way any portion of its said lot which is within the lines of Hickory street prolonged to the Allegheny river.

"3. The defendant has no right to use or occupy by any permanent erection any portion of its said lot northerly of high watermark of the Allegheny river, as the same is in Water street, and on land dedicated to public uses as a street or highway by the commonwealth when the town was originally laid out.

"4. The defendant in building its foundation wall below the line of ordinary high water is acting in violation of the laws not only of the commonwealth of Pennsylvania but of the United States.

"5. The sale of the land in question to the defendant by Warren borough was ultra vires and void.

"6. The present owners of lots on Water, Hickory and Second streets, having succeeded to all the rights of their predecessors in title, who purchased the same from the commonwealth upon the faith and implied representations of the original survey of the town, which survey shows Water street as bounded on the south by the Allegheny river, and Hickory street as running to said river, have a right to rely upon an implied covenant by the grantor that, subject to the requirements of the public, the street should forever remain as laid down in said survey. It is not therefore within the power of the commonwealth or of Warren borough to sell off any portion of its streets to private individuals or corporations, and any such act is ultra vires and void.

"7. The defendant had not only constructive but actual notice of the public proceedings of the council which preceded

its taking a deed from the borough, and therefore has no equity which should be heeded by the court, arising out of its purchase or payment of any portion of the purchase money to the borough."

The court is respectfully requested on the part of the defendant to find the following facts as applicable to this case, to wit:

" 1. Upon the original draft or survey of the borough of Warren, referred to in the second paragraph of plaintiff's bill of complaint, Water street is marked 100 feet wide along its whole course throughout the borough, from the northern limits of the borough along the Conewango creek and the Allegheny river to the southern limits of said borough.

" 2. All the way from the northern limits of the borough of Warren between said 100 feet of Water street and the Conewango creek, there was a strip of land which has been recognized by the borough of Warren, and has been built upon and occupied by dwellings and houses.  The said strip of land continues along the Allegheny river between it and said 100 feet of Water street far enough at least to include the lot of the defendant in controversy.

" 3. The said land between said 100 feet of Water street and the Conewango creek was sold by the borough of Warren under the act of assembly of March 6, 1845, referred to in the eighth paragraph of the plaintiff's bill, and the evidence shows that some money was paid into the borough upon some of such sales.

" 4. The certified copy of the original survey of the borough of Warren, in evidence, shows Hickory street at its southern terminus as opening into Water street, and there is no evidence to show that said Hickory street was extended across the strip of land between said 100 feet of Water street and the Allegheny river.

" 5. Water street, opposite the mouth of Hickory street, is some 25 feet above the Allegheny river.

" 6. Any road alleged by the plaintiff or shown by the evidence to lead from Water street west of Hickory street along the bank down to the Allegheny river, near and along the place in controversy, was upon land of the commonwealth; and there is no evidence that such road was built or kept in repair by the public.

" 7. If the evidence does show that there is a road leading from Water street to the Allegheny river, the evidence does not show that the construction of the proposed building of the defendant will substantially interfere with the use of such road.

" 8. The evidence does not show that the construction of the proposed building of the defendant will substantially interfere with the use of Water or Hickory streets.

" 9. The evidence does not show that there is or will be any substantial interference by the erection of the proposed building of the defendant, with the navigable capacity or use of the Allegheny river as a public highway."

The court is respectfully requested on the part of the defendant, to affirm the following propositions of law, as applicable to this case, to wit:

" 1. The banks of a navigable stream of water are that part of the sloping ground on either side, lying between ordinary high and low watermarks.

" 2. The owner of land along the navigable stream, has a qualified ownership to the land lying between high and low watermarks.

" 3. The only right of the public in land lying along a navigable stream between high and low watermarks, is to the use and navigation of said stream as a public highway.

" 4. The qualification upon the ownership of land along a navigable stream between high and low watermarks, is restricted to the single limitation that he may not use the said land so as to interfere with the right of the public, or of individuals, to the use and navigation of such stream as a public highway.

" 5. The test of the right of the owner of land along a navigable stream to a given use of the land lying between high and low watermarks, is not the fact that such land is sometimes overflowed with water, but whether such use does or will interfere with the use or navigation of such navigable stream as a public highway.

" 6. The owner of land lying along a navigable stream between high and low watermarks, may use such land for any and every lawful purpose which does not interfere with the use and navigation of such navigable stream by the public or by individuals as a public highway.

" 7. The obstruction to the use and navigation of a navigable stream as a public highway, must be an actual and substantial interference, and not merely technical and fanciful in order to call for the interference of the court.

" 8. The right of the public to the use and navigation of a navigable stream as a public highway, does not carry with it the right to go over the land belonging to a private person, in order to gain access to such navigable stream.

" 9. The method, manner and place of access to or of reaching a navigable stream is to be determined by the authority to whom the law has committed such determination.

" 10. Under the acts of assembly relating thereto, applicable to the borough of Warren, the law reposes in the burgess and council the duty of determining the place of access for the public to the navigable waters along the borough limits, subject to the control of the court in the method provided by law.

NOYES, P. J., filed the following opinion:

" This bill was filed by the attorney general on behalf of the commonwealth, to restrain the defendant from erecting and maintaining a permanent building upon land alleged to lie within the lines of two public streets, Water and Hickory, in the borough of Warren, and partly between high and low watermarks on the Allegheny river, and to encroach upon an ancient road to the river bank, and also upon an ancient landing at the foot of such road. Except as to certain inferences, there is no substantial dispute as to the facts, which are as follows:

" By virtue of an act of the assembly, approved April 18, 1795, a tract of land reserved for the purpose, lying at the junction of the Conewango creek and the Allegheny river, was surveyed into lots and out lots, streets and alleys, by certain commissioners appointed by the commonwealth, and the lots were sold by number as laid down on the plot returned by the commissioners. The plot exhibits a town shaped somewhat like a mutton chop, with the rib inclosing a bend in the river as it flows westerly by the town. A street is represented extending from the northeast corner of the plot southward along the Conewango to its junction with the Allegheny, and thence along the latter stream to the western limit of the town at a street called Public Way. The names and widths of the streets and lanes are marked upon the draft, and the street

above referred to is marked 'Water street, 100 feet wide.' The eastern boundary of this street in its southerly course down the Conewango, and the southern, in its westerly course down the Allegheny, is the irregular margin of those streams, except for a short distance near the mouth of the Conewango, where Market street and East street are represented as crossing Water, and extending to the water, and the southerly boundary of Water street is made by the line of blocks of land represented as lying between that street and the water.

" At an early day a small frame building was erected on the bank of the river at the northern end of the lot of ground now claimed and occupied by the defendant, which was used as a warehouse, store, and for unloading boats bringing merchandise by the river; it does not appear by what authority this was done, but the building still remains and is in the occupation of the defendant's tenant.

"Some years ago the borough authorities erected a stone building over the declivity of the bank of the river, invisible from the traveled track of the street, and it has been ever since used as a lockup.

" In 1871, a toll bridge was erected by the Pleasant Bridge Co., the approach to which occupies a portion of the river bank.

" With these exceptions Water street has been open to the river at all times since the laying out of the town.

" Behind the frame building above mentioned there was in a very early day a landing for steamboats, keel boats, canoes, rafts, and other craft.   No steamboats or keel boats have landed here since 1859, when the railroad bridge was built across the river, but it has been occasionally used for rafts and skiffs to the present time.

" Originally two wagon tracks ran down the bank of the river diagonally to this landing, one from the east and one from the west.   The former was obstructed by the bridge company, the approach to the bridge blocking it up; the latter has been occasionally, but not commonly used to the present day.

" An island below the mouth of the Conewango makes an ' eddy ' or harbor immediately below the abutment of the bridge, which stands upon the foot of a small island formerly lying some 40 or 50 feet from low watermark of the river. The abutment and approach of the bridge project some 50 or

60 feet into the stream further than the line of low water at the lot claimed by defendant. Behind this bank and abutment, including the land between high and low watermark claimed by defendant, is a very secure place for mooring rafts and boats, especially in high water.

"By an act of the assembly, approved March 6, 1845, the burgess and town council of the borough of Warren were authorized to 'lay out into lots any ground not belonging to individuals along the banks of the Allegheny river and Conewango creek, in the bounds of said borough, and the same to sell and convey in fee, or otherwise, to purchasers,' etc. 'Provided, that nothing herein contained shall interfere with the use of said river and creek as public highways.' There is no evidence that Water street, along the Conewango, had been obstructed in any way prior to this act; but, after its passage, land along the bank of the Conewango was laid out into lots and sold to individuals, who improved it by substantial buildings; by virtue of later acts Water street, along the Conewango, was narrowed from 100 to 60 feet, a strip 15 feet in width from the west side, and another 25 feet in width from the east side, being sold to the owners of the lots in front of which it lay.

"The burgess and town council, pursuant to a resolution adopted July 10, 1891, sold and conveyed by deed, without warranty, a lot of ground alleged to lie on the south side of Water street, and described as in the ninth paragraph of the bill, to the defendant. This lot includes the ground, or a portion of the ground, occupied by the small frame building hereinbefore referred to, which, with his claim, the defendant also purchased from the occupant for a valuable consideration.

"Before the filing of the bill the defendant had begun the erection of a substantial brick and stone building on the land so sold and conveyed to it by the borough, by erecting stone foundation walls along the water's edge, at, or near low watermark, a width of some 78 feet along the stream, and extending back towards the bank some 35 feet. The wall is some 3 feet in height at present. The ordinary rise of the river is 9 feet from low watermark. At times of ordinary high water the land inclosed by defendant's wall would be covered by water for from 35 to 45 feet back from the south wall, and the water at such times would be some 8 feet deep at the wall and shoaling in to the shore.

" The construction of the proposed building will diminish the space available for holding rafts or boats in high water, and for landing the same.   But it is proposed to provide the wall with rings for fastening rafts and boats, and the wall will operate to keep rafts mooring here straight with the stream, rendering them also less liable to be left aground by falling water. The building will interfere with the use of the river as a public highway in the manner in which it has been heretofore used ; but, balancing the convenience and inconvenience, it will not be a material inconvenience to persons navigating the river so long as the amount of traffic remains as at present, and the available landings are not obstructed by similar occupations at other points on the water front.

" I find as a fact that Water street has the Allegheny river for its southern boundary, and is not limited to 100 feet in width at the point where the defendant is erecting its building.

" This is perhaps a mixed question of law and fact, and, in so far as it depends upon my views of the law, should not be regarded as a finding of fact, though stated here.

" That in deeds, maps, or other writings, calls for natural objects will control calls for distance is a proposition of law so well established, so just, and so necessary to any reasonable interpretation that it needs neither authority nor argument. That the representation of a tract of land abutting upon another tract, or upon a stream, or other natural object, is the same as saying in words that it extends to the other tract or stream as its boundary, is also a necessary and self-evident proposition, but it has often been affirmed by the Supreme Court: Salmon Creek Lumber Co. v. Dusenberry, 110 Pa. 446, and cases cited by the court.

" The plot returned by the commissioners who laid out the town of Warren tells its story with a directness and precision which leave no room for question.   As clearly as if written in so many words they have depicted Water street as bounded on the Allegheny river from the mouth of the Conewango to the Public Way.   This appears not only from the distinct marking of the shore line of the river, without anything intervening between it and the street, but from the clear indication in the lower right hand corner of the map of the method by which the commissioners should, and would, have drawn the map, had it

been intended to leave land vacant between the street and the river.  Here the distance from the north line of Water street to the water is so great as to make the extension of the street to the water inconvenient.  Here, therefore, the land south of the 100 feet is laid out into blocks, and the streets entering Water street from the north are carried across it, and extended to the water's edge.  What the draughtsman did here he surely would have done along the whole water front had he intended to limit the street rigidly to its marked width and leave vacant land between it and the water, for that is the precise situation indicated at the foot of Market street.

" The fact that the streets entering Water street from the north, with the exception of Market and East, are not protracted across Water, is the strongest evidence that the latter was intended to go to the water, for it is incredible that any engineer would have omitted to provide in such a survey for access to the river.

" The learned counsel who have so ably and earnestly presented the defendant's case, have not attempted any argument from the draught itself, but have relied upon what is alleged to be popular and legislative construction.

" Cotemporary construction of laws, and even of deeds and maps, is deserving of attention when such instruments have become ancient.  Anything like a uniform construction by the persons interested, whose will the instrument is intended to express, is of the greatest weight if the meaning be at all doubtful or uncertain.  But it cannot be said that there is any cotemporary construction of this plot which can help the defendant.  For half a century, so far as the evidence enlightens us, while the town of Warren was being settled and built up, Water street throughout its entire length remained open to the water, as its name indicates was the intention of its founders, and in exact accordance with the plot.  The first act of assembly to which attention has been drawn is the act incorporating the borough in 1832, which declares that it intends to incorporate the town of Warren as laid out by the commissioners.  This act makes the streams the boundary of the borough.  If the defendant's contention is correct, it should have been a line 100 feet from the west and north lines of Water street, for the east and south lines of Water street were the limits of the land

appropriated to lots, outlots, squares, streets, lanes and alleys, and hence of the town plot. Vacant land lying between this plot and the river, open to appropriation under the land laws, was not a part of the town, any more than was the wilderness which bounded the outlots. The next act is the act of 1845 above referred to. This act does not in terms declare the existence of any vacant land between the street and the streams. The language is, 'Any ground not belonging to individuals along the banks of the Allegheny river and Conewango creek.' Even if this be given a somewhat broad construction, as I think should be done, and understood to mean not only 'not belonging to individuals' but not devoted to public use as a street, there is still no assertion by the legislature that there is any such land.

"When we turn our attention to the popular construction, we find nothing which can control the plain meaning of the plot, or which shows any error in it. The uninterrupted use of the water front, along the Conewango, for half a century after the laying out of the town, will surely balance the occupation since 1845; and along the river, with the exception of the frame building on the lot claimed by the defendant—which may have been tolerated by reason of the saving clause in the act of 1832, protecting nuisances in the streets—the lockup and the bridge, the river front has been freely open to Water street for a century. We have been, therefore, compelled to find that Water street is bounded south at the point where the controversy arises by the Allegheny river, with no vacant land intervening. A line parallel with the north line of Water street and 100 feet distant therefrom would run along the declivity of the river bank some 10 feet from the top of the bank. The proposed building would be south of such a line.

" As we find that Water street goes to the river, it is clear that Hickory street does not, and the ancient road becomes unimportant, as it was only a part of Water street.

" I find, specifically, the facts stated in the 1st, 2d, 3d, 7th, 8th, 9th and 10th paragraphs of the bill, all of which are admitted in the answer. I find the facts as stated in the plaintiff's requests numbered 1, 2, 3, 4, 5, 7, 9, 10, 13, 14, 16, 18, 19 and 22. Also the defendant's requests numbered 1, 2, 3, 4, 5 and 6.

" I also find the facts as stated in the plaintiff's 20th and 21st requests, but I do not regard them as material. Also the 11th, except as to Hickory street. The 12th calls for a finding of law and will be answered in its proper place; the fifteenth is declined; the 17th is without evidence other than the admission in the bill and answer, which have been already found. Except as adopted in the general findings the other requests are declined.

### "CONCLUSIONS OF LAW.

" The legal questions which seem necessary for us to determine are these :

" 1. Does the act of March 6, 1845, authorize the sale of land included in the bounds of Water street, or lying between high and low watermarks, to private individuals ?

" 2. Has the purchaser the right to occupy land between high and low watermarks, by permanent buildings, constituting an exclusive occupancy, if the navigation be not materially interfered with ?

" 3. If these are answered in the affirmative, had the commonwealth power thus to take its highways for private use ?

" If it be conceded that the commonwealth, after laying out land into streets, alleys and lots, and selling the lots according to the plot, may vacate the highways and sell the land to private owners, it is surely not asking anything unreasonable if we demand a clear and unambiguous declaration before we convict her of such an act. It is possible to so construe the act of 1845 as to include the whole of the street, and it certainly does include the land between high and low watermark, unless this be a part of the street. But there is nowhere any intention manifested to vacate the street, nor to take away or impair the rights of the public therein. Its spirit is clearly to transfer to the borough the rights of the commonwealth as proprietary in any land lying vacant and unappropriated between the street and the streams. She does not affirm that there is any such land, but merely grants, if any there be, the purchase money to the borough.

" But if we hold narrowly to the letter, and give it full scope as to the land devoted to the street, and the shore of the river, what rights did the purchaser acquire ? As has been said there

is no hint of any intention of confiscating, or conveying the rights of the public.    The street and the river are there before his eyes when he purchases.    His right is that of the commonwealth before the sale, and no more.    I conclude, therefore, as to the first question, that the act did not confer any right to occupy any part of the land devoted to public streets in the original plot by buildings.

" There is nothing in the act justifying even the raising of the second question, unless it be the proviso.    Authority to sell land lying along the bank of a navigable stream surely does not confer the right to exclusive occupancy of the land between high and low watermark, any more than such a right would accompany a sale from the commonwealth direct.    Can it be that the proviso, apparently inserted out of abundant caution, and to forestall a possible construction of the granting part of the law, will enlarge that grant, in respect to the very matter which it provides against?    The proviso is that nothing contained in the act shall authorize interference with the use of the navigable streams as public highways; and this is attempted to be construed to mean that permanent buildings devoted to private purposes may be erected and maintained on the ground over which boats and rafts have been accustomed from time immemorial to float and moor, if, on the whole, a court or jury shall think navigation is not materially impeded.    The test attempted to be applied is, we think, conclusive against the construction contended for.    The proviso is cautionary.    It does not enlarge the grant in the act.

" It was argued, however, that a riparian owner, without special authority from the sovereign, may use the land between high and low watermark, and we find the law to be so.    Nor have the public any rights in it as mere land.    But, when the water rises, the right of the public rises with it, and extends to every part of the land covered by water at ordinary floods. The question, whether an obstruction is or is not lawful, is a question of quality, not quantity.    If the riparian owner usurps the exclusive occupancy of any part of the public highway, for purposes foreign to navigation, he is a wrongdoer, even though there may be water enough left to float all the craft which ply there, and shore enough to furnish moorings.    If the public have a right to moor on the particular spot where the owner

wishes to build, this must be conclusive against his right to build there, without regard to the question whether there are, or are not, other places equally convenient. If one riparian owner may build houses on the shore, so may all, and there is an end at once of all the eddies and safe harbors along the navigable rivers. Clearly no such right exists. Equity will not interfere where the interference is merely nominal, or trifling, but when her aid is invoked by the commonwealth through her law officer, to restrain the erection of a substantial and permanent stone and brick structure, having no relation to the navigation of the river, the interference cannot be said to be trifling.

" These views make it unnecessary to consider the last question. The commonwealth in her character of proprietary, and successor to the Penns, is undoubtedly bound by her contracts, as are private persons. In her character of proprietary she cannot lay out towns, dedicate streets to public use, sell the lots on the faith of such dedication, and then vacate the streets and sell them to private persons.

" But she is not merely proprietary, she is the sovereign. Her people through their representatives may do whatever they think, or say they think, is for the public good, unless restrained by some limitation in the frame of our own, or the general government. If in the exercise of the police power of the state it becomes expedient to vacate a street, or part of a street, even one laid out and dedicated to public use in a town plot, I am not prepared to say it may not be done. So, although in general no adverse occupation will avail against the public, where a street has been narrowed by authority of law, and the land purchased of the public, occupied by all the owners on both sides for half a century without objection, it will require no straining to support such an occupation on the ground of estoppel. Such may be the situation of the owners along the Conewango. Their titles are not in any way dependent upon the present controversy. Here the grant is recent ; it has not been acquiesced in, but is challenged promptly before more has been done than definitely to assert a clear intention to invade the public right. I am not prepared to indorse the right of the commonwealth to take the street dedicated to public use for merely private uses. Such an act is not done as sovereign, but

as proprietor. No public considerations enter into it. But if she may do so, and may authorize the erection of buildings within the limits of a navigable stream, as I think she may, it is enough for the present case that she has not done so.

"I adopt the propositions of law presented by the plaintiff numbered 1, 3, 5, 6 and 7, though the last is immaterial. As to the 4th it is not necessary to give an opinion. The 2d is refused. Hickory street does not extend to the river.

"I also adopt the legal propositions presented by the defendant numbered 2, 3, 4, 5, 6, 7, 8, 9 and 10. This last point is correct, yet it must not be overlooked that the legislature has not given authority to the borough to exclude the public from access to the river at any point along Water street.

"In answer to the 2d point, I answer that the banks of a stream include more than the declivity towards the water, and extend to the entire embankment which retains the water in its channel.

"If this opinion be thought to have been drawn out to unreasonable length, let the importance of the interests involved excuse it. The defendant is a charity which the community does not see embarrassed or hampered in its enterprises without great regret, and if the right which it seeks could be conceded without more being involved, perhaps this suit would not have been brought. But, on the other hand, the right to sell this lot to the Young Men's Christian Association involves the right to sell the entire river front, and leaves nothing between destruction and the chief beauty of the town except the uncertain will of the burgess and town council for the time being.

"The right of the attorney general to prosecute this suit is unquestioned; the controlling facts are not only clear, but in my judgment undisputed, and such as to make it our imperative duty to grant the relief prayed for in the bill.

"Let a decree be drawn enjoining the defendant from erecting any building or structure within the bounds of Water street, or between high and low watermark of the Allegheny river, which will interfere with the public use of the street or the navigation of the river, as explained in this opinion. And it is further ordered that the costs of this proceeding be paid by the defendant."

*Error assigned* was decree awarding injunction.

*D. I. Ball* and *W. W. Wilbur*, of *Wilbur & Schnur*, for appellant.—Neither the act incorporating the town of Warren nor the plot of the same designates irrevocably the use to which the land in excess of the 100 feet street shall be put. There is nothing that requires it to be left open for commons, and it is not or may not be needed for a street.

No length of time or occupation can acquire title against the commonwealth: Kopf v. Utter, 101 Pa. 27; Northern Cent. R. R. v. Com., 9 W. N. C. 129; Com. v. Miltenberger, 7 Watts, 450; Barter v. Com., 3 P. & W. 253.

A long continued, uniform, and unquestioned practice by the whole community ought to be accepted at this day as the law upon the subject, unless there be some insuperable barrier against its acceptance, and a mere technical construction will not be such a barrier: Kosterbader v. Spotts, 80 Pa. 437; Long v. Cottrell, 78 Pa. 308.

The construction asked for violates no right, public or private. Persons purchasing lots from the commonwealth had notice that Water street was 100 feet wide. For fifty years lots have been bought and sold in the borough of Warren, with the knowledge that the legislature asserted the right to authorize the sale of the banks between the 100 feet street and the water.

The test as to whether land between high and low watermarks may be used for building is not whether the land is overflowed by water, but whether the buildings will interfere with the use and navigation of the stream as a public highway or with the navigable capacity thereof.

The owner of land lying along a navigable stream between high and low watermarks, may use his land for any and every lawful purpose which does not interfere with the use and navigation of such stream by the public or by individuals as a public highway: Zug v. Com., 70 Pa. 138; Allegheny v. Zimmerman, 95 Pa. 287; Philadelphia's App., 78 Pa. 33.

*James O. Parmlee, J. W. Lee* with him, for appellee.—When a survey calls both for a distance and a natural landmark and the two are found incompatible, the latter must prevail: Sal-

mon Creek Lumber Co. v. Dusenberry, 110 Pa. 446 ; Grier v. Penna. Coal Co., 128 Pa. 79; Koch v. Dunkel, 90 Pa. 264; Ake v. Mason, 101 Pa. 17.

Between high and low watermark the riparian owner cannot occupy to the prejudice of navigation, nor place obstructions on the shore without express authority from the state: Wainwright v. McCullough, 63 Pa. 66 ; Poor v. McClure, 77 Pa. 214; Wood v. Appal, 63 Pa. 210 ; Philadelphia v. Scott, 81 Pa. 86 ; Pursell v. Stover, 110 Pa. 43 ; Hartley v. Crawford, 81* Pa. 478 ; Dalrymple v. Mead, 1 Grant, 197 ; Freytag v. Powell, 1 Whart. 536.

When the owner of ground lays it off into town lots, with streets, etc., for their use, and sells lots accordingly, it is a dedication of these ways to the use of the purchasers: McCall v. Davis, 56 Pa. 431 ; Com. v. Barker, 140 Pa. 189 ; Penny Pot Landing v. Philadelphia, 16 Pa. 79 ; Com. v. Moorehead, 118 Pa. 344.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 30, 1895 :

All that can be profitably said, in relation to the facts as well as the questions of law involved in this case, will be found in the able and exhaustive opinion of the learned president of the court below.   We are fully satisfied as to the correctness of the conclusions, both of law and fact, so far, at least, as they are involved in the decree.   We therefore affirm the decree on his opinion and dismiss the appeal at appellant's costs.

WILLIAMS, J.

I dissent from the judgment in this case.   Under the statutes cited the borough of Warren has proprietary as well as municipal control of the lot in controversy and can make a title to the proposed purchaser.