STATE OF DELAWARE, New Castle County, Delaware, Council of Civic Organizations of Brandywine Hundred, Inc., Thomas S. Webster, Jr., individually and on behalf of himself and all others similarly situated, Plaintiffs,

v.

PENNSYLVANIA NEW YORK CENTRAL TRANSPORTATION COMPANY, a corporation of the Commonwealth of Pennsylvania; Stanley S. Resor, individually and as Secretary of the Army of the United States; and Frederick J. Clarke, individually and as Chief of Engineers, Corps of Engineers of the United States Army, Defendants.

Civ. A. No. 3849.

United States District Court,
D. Delaware.

Feb. 24, 1971.

488

David P. Buckson, Atty. Gen. of Del., Dover, William Prickett and Rodman Ward, Jr., Sp. Deputy Attys. Gen., for plaintiff State of Del.; Ruth M. Ferrell, State Sol., Wilmington, of counsel.

Robert V. Huber, Wilmington, Del., for plaintiffs The Council of Civic Organizations of Brandywine Hundred, Inc. and Thomas S. Webster and all those similarly situated.

Clarence W. Taylor, Wilmington, Del., Atty. for New Castle County, for plaintiff New Castle County.

F. L. Peter Stone, U. S. Atty., Norman Levine, Asst. U. S. Atty., Wilmington, Del., and Thomas L. McKevitt, Dept. of Justice, Washington, D. C., for defendants Stanley S. Resor, Secretary of the Army and Frederick J. Clarke, Chief of Engineers, Corps of Engineers of the U. S. Army.

Blaine T. Phillips, Michael D. Goldman and James F. Burnett, of Potter, Anderson & Corroon, Wilmington, Del., for defendant Pennsylvania New York Central Transp. Co.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This opinion will mark the reported beginning of the federal chapter of the continuing legal dispute between the State of Delaware and the Pennsylvania New York Central Transportation Company ("Penn Central")[1] concerning Penn Central's dike and fill operation on a certain portion of the Delaware River.[2] The case is presently before the Court for decision on the defendants' motion to dismiss for lack of jurisdiction[3] or to stay. Since this is a jurisdictional opin-

[1.] The company was formerly known as The Pennsylvania Railroad Company and acted under that name during much of the period involved in this case. In this opinion, the Court will refer to this defendant as Penn Central regardless of the actual name of the company at the time concerned.

[2.] The state cases will be discussed briefly infra. The decisions of the trial court, the Superior Court for New Castle County,—all adverse to the State— are State v. Pennsylvania Railroad Company, 228 A.2d 587 (1967); Id., State ex rel. Buckson v. Pennsylvania Railroad Company, 237 A.2d 579 (1967); Id., 244 A.2d 80 (1968). The Supreme Court of Delaware has affirmed these decisions in

all substantive particulars in two opinions: State ex rel. Buckson v. Pennsylvania Railroad Co., 267 A.2d 455 (1969); Id., 273 A.2d 268 (Del. January 7, 1971). The *res judicata* question has been raised by the defendant Penn Central, but since it is not a jurisdictional matter the Court will not decide it in this opinion.

[3.] The defendants had filed a broader motion to dismiss, but by Order dated June 19, 1970, the Court limited the issues to be briefed and argued to those contentions of the defendants that raise jurisdictional questions. Of course, this limitation does not prejudice the defendants' right to raise their further grounds for dismissal at some later point.

ion raising a number of somewhat complicated procedural issues, an abbreviated statement of facts will suffice.

## I. PARTIES AND FACTUAL BACKGROUND.

The plaintiffs in this action are: The State of Delaware; New Castle County; the Council of Civic Organizations of Brandywine Hundred, Inc.; and one Thomas Webster, Jr., individually and allegedly on behalf of all others similarly situated. The defendants are: Penn Central; Stanley S. Resor, individually and as Secretary of the Army; and Frederick J. Clarke, individually and as Chief of Engineers, Corps of Engineers of the United States Army.[4]

The defendants and the state and county governments presumably need no introduction. The Council of Civic Organizations of Brandywine Hundred, Inc. is alleged to represent 80 civic associations in Brandywine Hundred, a geographical area that includes the Penn Central land in question. Plaintiff Webster is a resident of the State of Delaware and alleges that for many years he has used Stoney Creek as access to the Delaware River and has used the land along the shore for recreational purposes. The complaint states that the class that Mr. Webster is alleged to represent also use the River, Creek and shore as a public right or easement. This opinion does not address any of the questions that would arise if the defendants challenged the class action aspect of this suit; Webster will be mentioned only individually.

In 1917 the Penn Central leased from the Philadelphia, Baltimore and Washington Railroad Company, a Delaware Corporation, the land adjacent to the Delaware River that is involved in this litigation. The lease was for a term of 999 years, terminating in 2916 A.D.[5] In August 1946 Penn Central applied to the District Engineer, Army Corps of Engineers for a permit to dike and fill a portion of the foreshore which was granted in November 1946. In each of the years 1949, 1953, 1956, 1959, 1962, 1966 and 1969 this permit was acted upon by the Corps favorably to Penn Central. The defendants argue that the permit was "extended" on a given date in each of those years for an additional period of time. Plaintiffs offer documentary evidence attached to their brief to demonstrate that at each juncture the old permit by its terms had expired and become null and void and that the subsequent "extension" was in fact a "reissuance." The significance the parties attach to this dispute is somewhat unclear at present, but whichever version is correct is irrelevant to this motion. Because this is a motion to dismiss, the Court will accept the plaintiffs' version for purposes of this decision.

In any event, during July 1954 Penn Central finally began filling the foreshore in question. For a period of several months during 1965 the Corps of Engineers ordered the railroad to stop filling until the diking was completed, but otherwise the operation continued at its own pace until June 9, 1970. On that date a new Delaware statute was

4. Mr. Resor and Mr. Clarke shall be referred to hereafter simply as the federal defendants or as the Army Corps of Engineers. They are primarily responsible for the federal actions that are under consideration in this case, although the Corps performed the operational tasks and made most of the decisions at issue in this case.

5. Penn Central argues that the PBW is a necessary party to this action because of this reversionary interest, which would defeat diversity jurisdiction in this case. The Court does not now consider diversity jurisdiction necessary in this action, and thus will not decide the merits of this Penn Central claim in this opinion at this time. But see Part III, infra at note 17. To the extent that this argument is based on Federal Rule 19, the Court does not believe that it is properly before the Court at this time because of the limitation of this motion to jurisdictional matters. Since the apparent interest of the PBW in the land and permit in question is so attenuated, the Court will refer to the Penn Central in this opinion as the sole private defendant in interest.

enacted which prohibited diking and filling operations on the Delaware River and Bay for a period of one year.

Plaintiffs have alleged that a series of Delaware citizens and groups opposed the operation as early as 1946 in letters and petitions to the Corps on the basis that the project would have an adverse effect on property values in the area and on the residential character of the area and the recreational value of the River and shore. The Corps has never conducted a public hearing on the permit although it has apparently given public notice of the several extensions. See, defendant Penn Central's Brief at III, IV; Plaintiffs' Brief at 4 and Appendix 16. Not until 1956 did the State itself get into the dispute—serving notice that it claimed title to part of the land being filled by Penn Central.

The State and County had a number of meetings and discussions with the railroad during the late fifties and early sixties. In 1963, the plaintiff Council of Civic Associations of Brandywine Hundred became involved in these discussions. In the end the plans discussed could not be agreed upon, and the State filed suit in October 1964 in State Court against the Penn Central seeking a declaratory judgment that the State held title to the subaqueous land being filled (the foreshore). In the course of the decisions cited in footnote 1 supra, the state courts have authoritatively decided: (1) that Penn Central was and is the riparian owner and therefore, under Delaware law, owns to the mean low water mark; (2) that the State has certain police powers over the foreshore (the area between the mean low water mark and the mean high water mark) but had not exercised them in a manner that would preclude Penn Central's dike and fill operation; (3) that a 1967 survey of the area provides the most accurate available measure of the mean low water line; and (4) that using the 1967 boundary line Penn Central's fill operation had not trespassed on State owned land. The final decision on the matters raised in the state suit was filed by the Supreme Court of Delaware on January 7, 1971. See note 2 supra. As far as this Court knows, the state court litigation is now at an end.

On February 13, 1970, the plaintiffs filed the complaint in the instant litigation; an amended complaint was filed on August 4, 1970. The amended complaint states five causes of action. The first cause of action alleges that the Corps of Engineers permit for the diking and filling project is invalid because such a permit may only be granted with the consent of Congress under 33 U.S.C. § 401 and that the operation causes certain definite and irreparable harm to plaintiffs.[6] The second cause of action alleges that the Webster class has engaged in open, continuous and adverse use of the land for twenty years giving rise to a common easement for recreational purposes in favor of the public, and, of course, that the operation will interfere with those rights of the public. The third cause of action alleges that Stoney Creek is a navigable stream and that the operation will block it off in violation of 33 U.S.C. § 401 and to the detriment of the Webster class who have used it for more than twenty years for access to the Delaware River. The fourth cause of action alleges that the diking and filling operation will result in a trespass on the state-owned land channelward of the mean low water mark. The fifth and final cause of action alleges that the Corps of Engineers gave inadequate consideration or no consideration at all to the ecological effects

6. More specifically, ¶ 15 of the amended complaint alleges that the diking and filling will: (a) abrogate the public right of access to the Delaware River and destroy the navigability of Stoney Creek; (b) destroy the "natural scenic resources of The Land"; (c) destroy and upset the ecology of the tidelands and other natural resources; (d) destroy or render unusable certain areas that have been used by the public for recreational purposes for "time beyond memory"; and (e) counter or destroy community and county planning.

of the diking and filling project in substantial violation of plaintiffs' rights under the National Environmental Policy Act of 1969, Public Law 91–190, 83 Stat. 852, effective January 1, 1970; and that the Corps failed to consult with the Fish and Wildlife Service as required by 16 U.S.C. §§ 661–666.

The complaint prays for appropriate declaratory and injunctive relief as well as monetary damages and such further relief as the Court may deem just and proper.

The defendants' motion to dismiss for lack of jurisdiction or, in the alternative, to stay this action raises the following issues: (1) whether each of the plaintiffs has standing to bring this action; (2) whether this Court has subject matter jurisdiction of this action either as a federal question or on diversity grounds; and (3) whether this action should be stayed pending further order of the District Court for the Eastern District of Pennsylvania which has jurisdiction over the reorganization of the defendant Penn Central pursuant to § 77 of the Bankruptcy Act, 11 U.S.C. § 205.[7]

## II. STANDING.

The defendant Penn Central argues that the plaintiffs lack proper standing to challenge the validity of the Corps of Engineers permit and the effects of the dike and fill operation. The plaintiffs' contrary position is based upon their interpretation of the recent cases in this area.

In two cases decided on the same day, Mr. Justice Douglas set forth the Supreme Court's most recent test for the determination of standing. Assoc. of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). The two-fold test requires: (1) that the "plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," (397 U.S. at 152, 90 S.Ct. at 829); and (2) that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (397 U.S. at 153, 90 S.Ct. at 830). Commentators agree that this test represents a considerable liberalization of the prior tests of standing, although they disagree as to whether or not even this broadening of the rule is sufficient. See, e. g., Barlow v. Collins, supra, 397 U.S. at 167, 90 S.Ct. 832 (Brennan, J., concurring in the result and dissenting); Jaffe, Standing Again, 84 Harv. L.Rev. 633 (1971); Davis, The Liberalized Law of Standing, 37 U.Chi.L.Rev. 450 (1970).

The Court need not be concerned with the academic dispute concerning the line resolving close cases since here all of the plaintiffs have clearly met the Supreme Court's test for standing particularly in view of the application of those tests to differing factual situations in this Circuit and elsewhere.[8]

---

7. When this motion was briefed and argued Penn Central also argued for a stay until the jurisdiction of the Delaware state courts was terminated. Because the Delaware Supreme Court recently decided the last appeal by the State concerning the determination of the dividing line between the State's property and that of Penn Central, the Court assumes that this issue is now moot.

8. See, e. g., Alameda Conservation Ass'n. v. California, 437 F.2d 1087 (9th Cir. January 19, 1971); Shannon v. United States Dept. of HUD, 436 F.2d 809 (3rd Cir. December 30, 1970) reversing,

305 F.Supp. 205 (E.D.Pa.1969); Hahn v. Gottlieb, 430 F.2d 1243, 1246 n. 3 (1st Cir. 1970); Tucker v. Hardin, 430 F.2d 737, 738 n. 3 (1st Cir. 1970); Nat'l Welfare Rights Organization v. Finch, 429 F.2d 725, 731–735 (D.C.Cir. 1970); Environmental Defense Fund, Inc. v. Hardin, 428 F.2d 1093, 1096–1097 (D.C.Cir.1970); North City Area-Wide Council, Inc. v. Romney, 428 F.2d 754, 757 (3rd Cir. 1970); Allen v. Hickel, 424 F.2d 944, 946–947 (D.C.Cir.1970); Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 861–873 (D.C.Cir.1970) (extensive analysis of cases prior to *Camp* and *Barlow*); Environmental De-

Each of the plaintiffs has alleged that the Corps of Engineers permit and Penn Central's dike and fill operation both has and will cause them "injury in fact." The State and New Castle County allege that the operation will have adverse effects on the ecology of the area, will block the navigable stream known as Stoney Creek which is entirely within the State and County, will obstruct the alleged public rights and easements in the shore citizens have gained by adverse use over a period longer than twenty years, and make the land unusable for the purposes presently planned by the State and County. The Council of Civic Organizations and Mr. Webster alleged that they will be injured in fact by the adverse effects on the ecology, by the withdrawal of land used for a long period by them for recreation and by the obstruction of navigation and other public rights. The Court has no doubt that the injury the plaintiffs have alleged is for purposes of standing "injury in fact."

Similarly, the Court can find no sufficient ground for holding that the interest sought to be advanced by the plaintiffs are not "arguably within the zone of interests to be protected" by several federal statutes including the Act under which the Corps of Engineers originally granted the permit and under which they have "reissued" it over the years. Of course, "* * * no explicit statutory provision is necessary to confer standing." Hardin v. Kentucky Utilities Co., 390 U.S. 1, 7, 88 S.Ct. 651, 655, 19 L.Ed.2d 787 (1968). The plaintiffs have alleged adverse effects on navigation, a subject obviously within the "zone of interests" to be protected under the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 et seq. They have alleged adverse effects on wildlife in the area, a subject obviously within the "zone of in-

terests" to be protected under the Fish and Wildlife Coordination Act, 16 U.S.C. § 661 et seq. They have alleged adverse effects on the environment, a subject obviously within the "zone of interests" to be protected by the National Environmental Policy Act of 1969, Public Law 91–190, 83 Stat. 852.

Each of these statutes is a "relevant statute" within the meaning of the standing section of the Administrative Procedure Act, 5 U.S.C. § 702:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

The Court's conclusion in this regard is amply supported by the Second Circuit's affirmance of District Judge Murphy's conclusion on the standing issue in Citizens Committee for Hudson Valley v. Volpe, 302 F.Supp. 1083 (S.D.N.Y.1969), aff'd 425 F.2d 97 (2nd Cir. 1970), cert. den., 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970). In that case the Sierra Club as well as the Citizens Committee and the Village of Tarrytown were granted standing to challenge the validity of a permit granted by the Corps to dike and fill on the Hudson River. The Sierra Club and the Committee were granted standing as "private attorney generals" to defend the public interest and the Village had standing in its own right. The Second Circuit relied on § 702 of the APA.

The Court need not elaborate on the "private attorney general" theory in this case, since it has determined that the plaintiffs here meet the standing criteria set by the Supreme Court based on their own individual asserted interests. Of course, their interests do overlap the so-called "public interest" extensively; and if the Court considered the "injury

fense Fund, Inc. v. United States Army Corps of Engineers, 324 F.Supp. 878 (1971); Coalition for United Community Action v. Romney, 316 F.Supp. 742, 747–748 (N.D.Ill.1970); DiCenso v. Robinson, 316 F.Supp. 112, 114 n. 1 (D. R.I. 1970); Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238, 244–246 (M.D.Pa.1970); Izaak Walton League of America v. St. Clair, 313 F.Supp. 1312, 1316–1317 (D.Minn. 1970).

in fact" asserted by the plaintiffs to be insufficient, their defense of the important public interests of navigation, environment, ecology and conservation might well, alternatively, entitle them to status as "private attorney generals." See Office of Communication of United Church of Christ v. F. C. C.. 123 U.S.App.D.C. 328, 359 F.2d 994 (1966); Scenic Hudson Preservation Conf. v. F. P. C., 354 F.2d 608 (2nd Cir. 1965); Road Review League v. Boyd, 270 F.Supp. 650 (S.D. N.Y.1967). The defendant Penn Central's citations of authority to the contrary are all either inapplicable to the factual situation now before the Court or unpersuasive to the extent that they depart from the reasoning of the cases cited supra.[9]

Thus, the Court concludes that the plaintiffs have alleged sufficient injury to give them standing in this action. If those allegations are supported at trial, there will be no cause to reverse this present decision.[10]

### III.  JURISDICTION.

Federal courts are extraordinarily preoccupied with matters of jurisdiction. Perhaps this is as it should be since we are courts of limited jurisdiction and in these legally complicated times nearly every major piece of federal litigation has state law aspects, political question aspects or some other facet which might oust such courts of their limited power to preside over legal disputes. Nevertheless, the prolix jurisdictional case law that this preoccupation has spawned makes each new decision on these matters more time-consuming than its predecessor. The Court is reluctant to further expand that literature unduly in

this opinion and, thus, will try to be brief.

Plaintiff has alleged jurisdiction under 28 U.S.C. §§ 1331, 1332, 2201, 2202; 5 U.S.C. § 701 et seq.; 33 U.S.C. §§ 401, 403, 406; Public Law 91–190 [January 1, 1970]; 16 U.S.C. §§ 661–666; federal common law and pendent jurisdiction. Penn Central argues that the statutes cited do not support federal jurisdiction, that there is no federal common law that has any relevance to this dispute and that there is no pendent jurisdiction in this case. The government brief argues the merits—that the permit is validly issued under 33 U.S.C. § 403 rather than being invalid because the structure in question is as plaintiffs contend, properly considered a "dike" under 33 U.S.C. § 401. Cf. Citizens Committee for Hudson Valley v. Volpe, 425 F.2d 97 (2nd Cir. 1970), affirming 302 F.Supp. 1083 (S.D. N.Y.1969), cert. den., 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970).

After considerable research, the Court has concluded that nearly all the questions presented here on jurisdictional issues have been considered by other courts. Although many of these issues cannot fairly be said to be judicially "settled" beyond reasonable dispute, there is little reason to do more than cite to the discussion in those cases that support the view the Court has reached.

■   This case involves the validity of a federal agency's action, the alleged infringement of federally protected rights by Penn Central with the permission of the Corps of Engineers and the plaintiff's pendent claims that they have acquired certain easements and/or other rights that the Penn Central operation will or has unlawfully prejudiced. As to

9.  Penn Central relies on Sierra Club v. Hickel, 433 F.2d 24 (9th Cir., Sept. 16, 1970) and South Hill Neighborhood Assoc. Inc. v. Romney, 421 F.2d 454 (6th Cir. 1969). The Court considers both of these cases inapposite on a factual basis. Moreover, the *South Hill* case was decided prior to the Supreme Court's landmark decisions in *Assoc. of Data Processing Service Org., Inc.* and *Barlow*

supra and would seem to be contrary to the test announced in those cases.

10. The District Court in the *Citizens Committee for Hudson Valley* case supra allowed the plaintiffs there to introduce evidence on the issue of standing at trial. This seems a perfectly logical procdure, and the Court will follow it in this action to the extent that there is further factual dispute on this issue.

the validity of the Corps permit and the alleged infringement of federally protected rights, the Court considers it patently obvious that it has jurisdiction to hear these matters under several federal statutes and a number of recent cases.

Of course, the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202, is not an independent ground for federal jurisdiction. Schilling v. Rogers, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). This Court has jurisdiction, however, under 28 U.S.C. § 1331 because the action arises under federal statutes [11] and plaintiff has creditably and in apparent good faith alleged that the amount in controversy exceeds $10,000 exclusive of interest and costs.[12] See, e. g., Citizens Commit-

tee for Hudson Valley v. Volpe, 302 F.Supp. 1083, 1091 (S.D.N.Y.1969), aff'd 425 F.2d 97 (2nd Cir.1970), cert. den., 400 U.S. 949, 91 S.Ct. 237, 27 L. Ed.2d 256 (1970). Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259, 261–262 (2nd Cir.1967); Eastern Air Lines, Inc. v. Flight Engineers Internat'l Assoc., 340 F.2d 104, 106 (5th Cir.1965); 1 Moore, Federal Practice ¶ 0.60[8.–3] at 627–35 (2nd ed. 1964).

■ Whether or not the Administrative Procedure Act, 5 U.S.C. § 701 et seq. should be labelled a jurisdictional statute is unresolved in this Circuit,[13] but it is apparent that however the APA is labelled the cases interpreting it support judicial review in this case. See: Abbott Laboratories v. Gardner, 387 U. S. 136, 140–141 (1967); Citizens Com-

---

11. The Court is convinced that this action "arises under": (1) the Rivers and Harbors Act, 33 U.S.C. § 401 et seq., insofar as it attacks the validity of the Corps of Engineers permit; (2) the National Environmental Policy Act of 1969, Public Law 91–190, 83 Stat. 852, insofar as it alleges infringement of plaintiff's federally recognized interest in the promotion of a healthy environment; and (3) the Fish and Wildlife Act of 1934 as amended, 16 U.S.C. § 662(a), and the Fish and Wildlife Act of 1956 as amended, 16 U.S.C. § 742a et seq., insofar as it alleges infringement of the federally protected interests and the federal policies stated in those statutes. Whether or not any of these statutes confer on plaintiffs an enforcible procedural or substantive right is a question that goes to the merits of this case and not this Court's jurisdiction of the dispute.

Plaintiff has also alleged that the action arises under a number of other federal statutes and executive orders which may or may not be relevant to the claims raised. The Court need not consider these matters here since it has resolved this jurisdictional issue in plaintiff's favor.

12. Penn Central takes the position that plaintiffs have not raised a "substantial question" as to the jurisdictional amount and that they have a burden to prove their allegation of jurisdictional amount on this motion since Penn Central has questioned it. The Court does not consider this posi-

tion good law. See generally 1 Moore, Federal Practice ¶0.92 (2nd ed. 1964). Plaintiffs have alleged the requisite jurisdictional amount, and the Court does not believe it inherently incredible that such amount is involved in this dispute. Therefore, the Court will accept the allegation as true for the purpose of deciding this motion to dismiss. If plaintiffs cannot establish the jurisdictional amount at or before trial, that may be of no consequence to their federal claims. See the Court's conclusion concerning the Administrative Procedure Act, infra.

As to the state law claims, plaintiffs may have to establish the requisite jurisdictional amount if the Court later determines that there is not sufficient ground for pendent jurisdiction of those claims. See discussion of pendent jurisdiction Part III infra. This may raise serious problems because it is well recognized that some classes, and perhaps the Webster class (if there is such a class) is one of these, cannot aggregate their claims to reach the requisite jurisdictional amount. Cf. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), but cf. Note, Taxpayer Suits and the Aggregation of Claims: The Vitiation of *Flast* by *Snyder*, 79 Yale L.J. 1577 (1970).

13. See the discussion of this question by Circuit Judge Stahl concurring in Charlton v. United States, 412 F.2d 390, 395–396 (3rd Cir. 1969).

mittee for the Hudson Valley v. Volpe, 425 F.2d 97, 101–102 (2nd Cir.1970), affirming 302 F.Supp. 1083, 1090–1091 (S.D.N.Y.1969), cert. den., 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970); General Motors Corp. v. Volpe, 321 F. Supp. 1112 (D.Del. December 28, 1970); Powelton Civic Home Owners Assoc. v. Dept. of HUD, 284 F.Supp. 809, 819–820 (E.D.Pa.1968); Road Review League v. Boyd, 270 F.Supp. 650, 659 (S.D. N.Y. 1967). The language of 5 U.S.C. § 703 ("* * * any applicable form of legal action, * * * in a court of competent jurisdiction * * *") seems to support the view that another ground for jurisdiction, like 28 U.S.C. § 1331, is required.[14] This view, however, is difficult to reconcile with the language of § 702 of the APA stating that an aggrieved person has a "right" to judicial review of agency action and with the Supreme Court's interpretation of the intended scope of the Act: [15]

> The legislative material elucidating that seminal act manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's "generous review provisions" must be given a "hospitable" interpretation. * * * Again in Rusk v. Cort, [369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809] at 379–380 [82 S. Ct. at 794 (1962)], the Court held

that only upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review. [footnote and citations omitted]

In any event, since the Court here holds that it has federal question jurisdiction of this action, the nature of the APA need not be further elaborated.[16]

The Court having determined that it has jurisdiction of the federal claims, the question remains whether the state law matters can or should properly be heard with the federal questions. This question presents a series of ambiguous issues, and the Court has found no fully satisfactory resolution of it. For the present, the Court concludes that there is sufficient commonality between the state and federal claims to support the Court's refusal to dismiss the pendent claims.[17] However, the pendent jurisdiction problem bears an important relationship to the Penn Central's *res judicata* claim (which is not before the Court on this motion since it is not a jurisdictional issue) and its argument that judicial comity requires or permits abstention so that these pendent claims can be decided by the state courts (which was argued to some extent but with reference to the then pending appeal in state courts which is now moot). These two questions must come before the Court at a later time, and, one hopes,

---

14. Accord: Pan American World Airways, Inc. v. C. A. B., 129 U.S.App.D.C. 159, 392 F.2d 483, 494 (1968); Local 542, Internat'l Union of Operating Engineers v. N. L. R. B., 328 F.2d 850, 854 (3rd Cir. 1964); Ove Gustavsson Contracting Co., Inc. v. Floete, 278 F.2d 912, 914 (2nd Cir. 1960), cert. den., 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960).

15. Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

16. It is true, of course, that the federal question statute requires a jurisdictional amount and the APA does not, but the Court need not address this question unless and until it is shown that plaintiffs cannot sustain their burden of proof on this issue.

17. This determination makes it unnecessary for the Court to rule on Penn Central's contention that the PBW is a necessary party—defeating diversity jurisdiction because the PBW is a Delaware corporation. See note 5 supra. If it is later decided that there is no pendent jurisdiction, the question of an independent jurisdictional basis for the state law claims will have to be decided. The Court is reluctant to decide this question now because there may be difficult problems in regard to the PBW lease (whether or not there is any possibility that the property might revert to the PBW, particularly since the Penn Central is in bankruptcy) and also in regard to the presence of requisite jurisdictional amount. See note 12 supra.

the record will be sufficiently developed at that time to determine if the state claims are truly "pendent" and if they should be retained by the Court.

The foundation on which all current discussion of federal pendent jurisdiction must be based is United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs* the Supreme Court affirmed the lower court's assumption of pendent jurisdiction of state labor law claims, but discarded the old "single cause of action" rule of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) which had confused lower federal courts for some time.[18] The Court sharply distinguished the federal courts' *power* to exercise pendent jurisdiction from the *discretionary employment of that power* in particular cases. Since the Court is presently concerned with a motion to dismiss for lack of jurisdiction, the Court here decides only the question of jurisdictional power. In keeping with the permissive instructions of *Gibbs*, the question of whether the Court should in its discretion exercise this power will be determined, upon proper motion, at a later time.

The *Gibbs* Court's holding on the question of the extent of federal court power over pendent claims is contained in one textual paragraph, 383 U.S. at 725, 86 S.Ct. at 1138:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *," U.S.Const. Art. III, § 2, and the relationship · between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103 [53 S.Ct. 549, 77 L.Ed. 1062 (1933)]. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. (footnotes omitted, emphasis in original).

One matter raised by this passage can be dispensed with at the outset. As the previous discussion of federal question jurisdiction and the Administrative Procedure Act should make clear, the Court has no doubt that the "federal claim" in this litigation has "substance sufficient to confer subject matter jurisdiction" on this Court. The remaining issue is whether the state and federal claims "derive from a common nucleus of operative fact" or, in other words one assumes, they are "such that he [plaintiff] would ordinarily be expected to try them all in one judicial proceeding."

These phrases have received some thoughtful, interpretation by several federal courts, but none of the cases bear close resemblance to the one before the Court. Generally those cases involved a single *transaction* between the parties to the lawsuit or a single tort committed by one of the parties or a series of transactions or torts which constituted a relatively continuous course of *conduct*.[19] Thus, in some cases pendent jurisdiction might have been present under a liberal interpretation of the old "cause of action" test. In Knuth v. Erie-Crawford

---

18. See, Note UMW v. Gibbs and Pendent Jurisdiction, 81 Harv.L.Rev. 657, 657–659 (1968). The *Gibbs* court discusses *Hurn* at 383 U.S. 722–724, 86 S.Ct. 1130.

19. See, e. g., Rogers v. Valentine, 426 F.2d 1361, 1363 (2nd Cir. 1970) ; Vanderboom v. Sexton, 422 F.2d 1233, 1241–1242 (8th Cir. 1970) ; Kletschka v. Driver, 411 F.2d 436, 450 (2nd Cir. 1969) ; Stone v. Stone, 405 F.2d 94, 96–97 (4th Cir. 1968) ; Knuth v. Erie-Crawford Dairy Cooperative Assoc., 395 F.2d 420, 427 (3rd Cir. 1968).

Dairy Cooperative Assoc., 395 F.2d 420, 427 (3rd Cir.1968), the Third Circuit held a claim based on common law fraudulent conversion, tortious interference with business relations and violations of the Pennsylvania Milk Control Act was pendent to a claim based on antitrust violations. The Court stated:

> The court below seemed to believe that in order to invoke pendent jurisdiction both the federal and state claims must derive from a common nucleus of operative facts and an invaded right which is common to both. We think this is too narrow an approach to the issue, particularly in the light of the discussion in the *Gibbs* case. A right allegedly violated in a Sherman Act case and a right allegedly invaded under the common law may well have a common factual basis although the source of the "right" is different. Such a case is not automatically inappropriate for determination in a single trial. Certainly the fact that different remedies may be involved in disposing of the claims does not alter this conclusion.

Although the quoted passage is a liberal and sensible interpretation of the *Gibbs* opinion that appeals to the strong federal policy of judicial economy,[20] it does not aid this Court greatly in the present case because it does not address the problem of pendent jurisdiction in relation to a dispute over various interests and rights in a definable geographical area. Here plaintiffs assert that the Corps and Penn Central have ignored or violated certain rights and interests that they have in the use of Penn Central's property—some of these rights are alleged to arise under federal statutes and some under state law. The common operative facts are the procedures employed in issuing and reissuing the permit, the diking and filling operation of Penn Central that the Corps approved, and the manner in which that operation infringes and/or will infringe plaintiffs' alleged rights and interests (state and/or federal) and legally protected activities. The federal claims are of sufficient consequence that they cannot be considered appendages to the state law claims. 383 U.S. at 726, 86 S.Ct. 1130. The Court would speculate that the proof on the two sets of claims will overlap a good deal.[21]

Taking a common sense approach to consideration of pendent jurisdiction in this case,[22] the Court can at this point see no particularly compelling reason why the state issues should not be heard with the federal matters since they are basically two sides of the same coin— two aspects of the plaintiffs' continuing effort to get Penn Central's fill project stopped. There is a basic common nucleus of operative fact, although there also appears to be sufficient cleavage between the two sets of claims that the state law claims could be dismissed in the Court's discretion at some later time. For example, if it becomes perfectly clear that plaintiffs are attempting to have this federal court "apply" state property law in a totally novel manner, it seems logical that the import of *Gibbs* would require this Court to dismiss the state law claims. The abstention and comity doctrine would outweigh the impetus for judicial economy and convenience. On the other hand, at a later stage of these proceedings there might not be any state claims if they are covered by *res judicata*, and the Court will not need to decide how its dis-

---

20. See, e. g., UMW v. Gibbs supra, 383 U.S. at 724, 86 S.Ct. at 1138: "Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."

21. This is a new legal area for the Court, and a relatively new area for federal courts generally, to the extent that it involves the current concern over pollution, ecology and conservation. It is difficult for the Court to determine in advance what proofs will be offered by plaintiffs.

22. See Note, UMW v. Gibbs and Pendent Jurisdiction, 81 Harv.L.Rev. 657, 660–662 (1968).

cretion in this regard should be exercised. In any event, this Court determines that for the present these state law claims come within the scope of the Court's power of pendent jurisdiction and that the discretionary question will be examined again at a later stage of these proceedings.

## IV. THE BANKRUPTCY COURT'S ORDER.

On June 21, 1970, several months after this suit was filed, the defendant Penn Central filed a petition for reorganization under § 77 of the Bankruptcy Act, 11 U.S.C. § 205, in the Eastern District of Pennsylvania.[23] In approving the petition, the Bankruptcy Court entered an order which among other things prohibits all persons and corporations "from commencing or continuing any proceeding against the Debtor, whether for obtaining or for enforcement of any judgment or decree or for any other purpose" with certain exceptions not pertinent to this action.[24]

Plaintiffs argue that the Bankruptcy Court's order does not apply to this action because the claims of the plaintiffs are not "provable" in Bankruptcy and therefore, could not be discharged by the Bankruptcy Court. Penn Central argues that the order obviously applies to this proceeding, and, thus, the action should be stayed at least until such time as the Bankruptcy Court gives permission for this action to go forward.

The power of a bankruptcy court to enter an order as broad as that entered in this case is not disputed. See Ex parte Baldwin, 291 U.S. 610, 615, 54 S. Ct. 551, 78 L.Ed. 1020 (1934). Plaintiffs' argument that the Bankruptcy Court's order should not be considered to apply to this action because staying it will not protect the *res* or otherwise aid the bankrupt might be sound bankruptcy policy, but it is an argument that is properly addressed to the Bankruptcy Court —not this one. This Court will not determine the proper scope of the Bankruptcy Court's order.[25] Penn Central's properties are now exclusively in the

23. Penn Central Transportation Co. v. National City Bank of Cleveland, Ohio, 315 F.Supp. 1281 (In the Matter of Penn Central Transportation Co., Debtor) (E.D.Pa.1970).

24. A copy of the Order is attached as Exhibit "F" of the Affidavit of Charles E. Mechem, Assistant General Counsel of Penn Central. Paragraph 9 of the Order provides:

9. All persons and all firms and corporations, whatsoever and wheresoever situated, located or domiciled, hereby are restrained and enjoined from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, money, deposit balances, credits, choses in action, interests; railroads, properties or premises belonging to, or in the possession of the Debtor as owner, lessee or otherwise, or from taking possession of or from entering upon, or in any way interfering with the same, or any part thereof, or from interfering in any manner with the operation of said railroads, properties or premises or the carrying on of its business by the Debtor under

the order of this Court and from commencing or continuing any proceeding against the Debtor, whether for obtaining or for the enforcement of any judgment or decree or for any other purpose, provided that suits or claims for damages caused by the operation of trains, buses, or other means of transportation may be filed and prosecuted to judgment in any Court of competent jurisdiction, and provided, further, that the title of any owner, whether as trustee or otherwise, to rolling stock equipment leased or conditionally sold to the Debtor, and any right of such owner to take possession of such property in compliance with the provisions of any such lease or conditional sale contract, shall not be affected by the provisions of this order.

25. The Court notes in passing that it does not consider the proceedings in this case to date to violate the Bankruptcy Court's order because it was commenced prior to June 21, 1970, and since that date the only steps the parties have taken is to get a determination of jurisdiction—a determination of whether or not there is a lawsuit pending in this Court.

custody of the Bankruptcy Court, and its permission must be obtained before this action can be continued against defendant Penn Central.

Therefore, this action will be stayed until such time as the Bankruptcy Court gives its permission for the continuation of this suit or until the jurisdiction of the Bankruptcy Court over Penn Central is finally terminated or until further order of this Court.

Submit order in accordance herewith.