

# The Attorney General of Texas

December 15, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312 .
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Armstrong
Commissioner, General Land Office
Stephen F. Austin Building
Austin, Texas 78701

Opinion No. H-1284

Re: Authority of the General Land Office to regulate activities on adjoining lands.

Dear Commissioner Armstrong:

You ask four questions concerning the authority of the General Land Office to regulate activities on adjoining lands. You first ask:

> 1. Whether the Commissioner of the General Land Office has authority to institute, through the Attorney General's Office, proceedings in court to abate activities on adjoining lands, not administered by GLO, when those activities would adversely affect state lands or flats administered by GLO.

The Commissioner of the General Land Office is given authority, in conjunction with various boards, to administer certain state-owned lands. See Nat. Res. Code § 33.001, et seq. (coastal public land); § 51.001, et seq. (public domain); § 161.001, et seq. (Veteran's Land Fund). See also Nat. Res. Code § 31.051(3) (general duties); §§ 63.121, 63.152 (commissioner referred to as "trustee of the public lands of this state").

In our opinion the general authority given to the commissioner over certain public lands allows him, subject to the authority of the appropriate board and through the attorney general, to institute court proceedings to abate nuisances or other activity adversely affecting those lands subject to his administration so long as jurisdiction over the activity sought to be abated does not lie with another agency. This last qualification is necessary because the legislature may vest designated state agencies with the authority to abate or regulate certain nuisances. See, e.g., V.T.C.S. art. 4477-5 (Texas Air Control Board); V.T.C.S. art. 4477-7 (Texas Water Quality Board); Nat. Res. Code § 131 (Railroad Commission). A common law nuisance action may not be brought against an activity that has been lawfully authorized by the appropriate state agency. Dudding v. Automatic Gas Company, 193 S.W.2d 517 (Tex. 1946); Schulman v. City of Houston, 406 S.W.2d 219 (Tex. Civ. App.—

Tyler 1966), writ ref'd n.r.e. per curiam, 412 S.W.2d 34 (1967). Also, when an agency has general authority over an activity or when that activity is regulated by statute, courts may conclude that common law rights have been preempted by the grant of power to the regulatory agency. Walker v. Texas Electric Service Company, 499 S.W.2d 20 (Tex. Civ. App. — Fort Worth 1973, no writ) (electric transmission lines not a nuisance for interfering with aviation because in compliance with statute and Airport Zoning Authority given power to remove lines if they interfere with aviation). The test courts generally use is whether the provisions of law are adequate to effect the purposes sought to be advanced. Compare Goldsmith v. Powell, 159 S.W.2d 534 (Tex. Civ. App. — Dallas 1942, writ ref'd) (penal code provision inadequate to protect waters from pollution so nuisance action allowed) with New Mexico ex rel. Norvell v. Arizona Public Service Company, 510 P.2d 98 (N.M. 1973) (state environmental protection act adequate to protect public so nuisance action dismissed). Sometimes a statute will declare whether common law actions are intended to be preserved or preempted. See, e.g., Water Code § 26.133 (common law remedies preserved); V.T.C.S. art. 4477-5, § 1.06 (common law remedies preserved). Whether a nuisance action, or other common law remedy, could be maintained in any particular instance would depend on the type of nuisance involved and the statutes and agencies having jurisdiction over that activity.

Your second question is:

> 2. Whether, and to what extent, the management policies developed by GLO for the protection of state lands under its administration would be controlling for a court in deciding whether the public interest in lands administered by GLO was being violated by a specific activity on adjoining lands.

The state may not declare any activity to be a nuisance that is not a nuisance in fact. Stockwell v. State, 221 S.W. 932 (Tex. 1920). The determination as to whether a specific activity is a nuisance is ultimately a judicial one. Crossman v. City of Galveston, 247 S.W. 810 (Tex. 1923). This is true even when the legislature declares something to be a nuisance, but the courts will decide contrary to the declaration of the legislature only in clear cases. Stockwell v. State, supra. While the management policies of the General Land Office would carry weight in the courts, we do not believe they would be controlling.

Your third question is:

> 3. In situations in which the legal sufficiency of an agency position is not at issue, can the Attorney General reject, on the basis of his independent substantive policy evaluation, the request of a co-equal statewide elected official to institute a suit necessary for the fulfillment of the latter's constitutional duties.

The attorney general is the chief legal officer of the state. Tex. Const. art. 4, § 22. He may not be deprived of his right to prosecute actions for the state.

Maud v. Terrell, 200 S.W. 375 (Tex. 1918). He has the right to "investigate the facts and exercise his judgment and discretion regarding the filing of a suit." Agey v. American Liberty Pipe Line Co., 172 S.W.2d 972, 974 (Tex. 1943). Mandamus will not lie to compel the attorney general to file a suit because it is his duty, as the state's chief legal officer, to determine

> [f]irst, . . . that an offense has been committed; and, second, that there is a reasonable probability that it may be prosecuted to a successful issue. . . .

Lewright v. Bell, 63 S.W. 623 (Tex. 1901).

In our opinion the attorney general must exercise his independent professional judgment with regard to questions of a legal nature surrounding the filing of a lawsuit and the courts will uphold his decisions, at least in the absence of bad faith. Osborne v. Keith, 177 S.W.2d 198 (Tex. 1944); Marshall v. City of Lubbock, 520 S.W.2d 553 (Tex. Civ. App. — Amarillo 1975, no writ). Of course, the attorney general's role as the state's chief legal officer generally defines his authority to include only decisions of a legal nature or ones that are legally-related. In administering lands under the authority of the General Land Office, it is within the authority of the commissioner and the appropriate board to make policy judgments that are in the best interest of the state's lands and do not involve legal issues that are committed to the discretion of the attorney general.

Your fourth question is:

> Whether the GLO can bring suit, through the Attorney General's Office, against federal agencies to represent the public interest in state lands or flats administered by GLO when activities permitted or carried out by federal agencies would adversely affect state lands or flats administered by GLO.

The doctrine of sovereign immunity prohibits suits against the United States without its consent. Affiliated Ute Citizens of Utah v. U.S., 406 U.S. 128 (1972). A broad, but not unlimited, consent to sue federal agencies is found in 5 U.S.C., section 702 which states:

> A person suffering legal wrong because of agency action . . . within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States. . . .

Under this section, there is a strong presumption in favor of reviewability of agency action that will be overcome only by clear evidence that Congress intended to disallow it.  Data Processing Service v. Camp, 397 U.S. 150 (1970); Barlow v. Collins, 397 U.S. 159 (1970).  To challenge agency action, a plaintiff must allege injury in fact and that the interest sought to be protected is arguably within the zone of interests protected by the statute in question.  Id.; see U.S. v. SCRAP, 412 U.S. 669 (1973) (discussion of injury in fact); Cotovsky-Kaplan Physical Therapy Association, Ltd. v. U.S., 507 F.2d 1363 (7th Cir. 1975) (discussion of interests being arguably within zone of interests protected by statute); Robinson v. Knebel, 550 F.2d 422 (8th Cir. 1977) (standing to sue under National Environmental Policy Act, 42 U.S.C. § 4321, et seq.).  Under this section, states have been permitted to sue federal agencies in order to protect lands in which the state has an interest. Illinois ex rel. Scott v. Hoffman, 425 F. Supp. 71 (S.D. Ill. 1977); Delaware v. Pennsylvania New York Central Transportation Company, 323 F. Supp. 487 (D. Del. 1971).  States have also maintained certain suits based on the provision for general federal question jurisdiction, 28 U.S.C., section 1331, in conjunction with the National Environmental Policy Act.  Alabama ex rel. Baxley v. Corps of Engineers, 411 F. Supp. 1261 (N.D.  Ala. 1976); Pennsylvania v. Morton, 381 F. Supp. 293 (D.C.D.C. 1974).  In our opinion the Commissioner of the General Land Office may bring suit through the Attorney General's Office against federal agencies under the terms of 5 U.S.C. section 702 and 28 U.S.C. section 1331.

## SUMMARY

So long as jurisdiction over the activity sought to be abated does not lie with another agency, the Commissioner of the General Land Office has general authority to institute, through the Attorney General's Office, court proceedings to abate activities that adversely affect state lands administered by the GLO.  In deciding whether or not specific activity was illegally and adversely affecting state lands, management policies developed by GLO would have persuasive value, but would not be controlling on a court.  The attorney general has the discretion to use his professional legal judgment in deciding under what circumstances a suit should be filed, but policy decisions regarding the maintenance of certain state lands are committed to the authority of the commissioner and the appropriate boards. GLO may bring suit, through the Attorney General's Office, against federal agencies under the terms provided by federal statutes.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn